of Financial Services, 182614. Mr. Calde, Victor. Good morning, Your Honors. Linda Fang for the State Department of Financial Services. DFS is entitled to a new trial because there is a strong suspicion here that the jury's verdict was predicated upon confusion. Are you talking about the 2011, the date that they put in the verdict form? That's right, Your Honor. So my question to you is why didn't you ask the judge to have the jury clarify what it meant? Did anybody object to that at the time? No, we didn't. It was an advisory finding by the jury that opposing counsel had requested for purposes of damages calculations. But the objection requirement is a separate procedure under Rule 49 when there is an inconsistent verdict. There is nothing logically inconsistent with— It seems to me, and help me because I was struggling with this, as you say, that question was posed purely for advisory purposes relating to damages, having nothing to do with liability. And yet you are pinning on the liability side all of these arguments, premising all of your arguments on that verdict form. But it has nothing to do with liability. It has to do really fundamentally with damages. So why is this the source of jury confusion that should upturn an entire jury verdict? Because the answer to that question, the October 2011 date, has no connection whatsoever to the only discrimination claim that was before the jury. So what? So what? The jury was being asked something. It wasn't made clear to the jury why they were being asked that, but it actually had to do with when Costello was hired and when he was hired. The jury was asked to give advice about something generally and came back with something. Now, I happen to think that what the district court—how it harmonized is not even unreasonable that the jury was being asked, when do you think that this guy would never have been hired because he was Iranian, and that the jury answered he never would have been hired because the whole mood of the place was such, and there was plenty more evidence of mood than of specific, but there was plenty of evidence of mood, and that the jury came back and said, oh, we don't think this person would ever have gotten that job. So I don't even see the inconsistency, but I also have a problem with why is an advisory opinion ever inconsistent? Well, so it's not about—the question of whether or not the jury was confused about what claim was actually before it and what it predicated its verdict on is separate from the question of whether the question that—the answer that they gave was advisory or binding. But there's no particular reason to think that the jury was confused because they said he would never have been hired to mean that they didn't think that he was also specifically discriminated against at the later time when he applied for a job. They're two different things. Well, the question that the jury answered was, please set forth the date of DFS's first decision not to select Mr. Sauber for the chief risk management specialist position that was taken based on his national origin and or religion. That position was not posted. Mr. Sauber had not applied for it. And as a general matter of the— And they basically said, we don't think these characters would have hired this guy, given this guy that position, at all. On the inception of that. Which, you know, there's something very funny about this case. The jury clearly did not believe the state. They clearly believed that this guy was out because he was an Iranian. They were very sophisticated. They said it isn't religion, it is nationality. The jury had, I think, quite clearly in mind a picture. And because of that picture, they gave damages which were way out of proportion. Because they were sufficiently troubled by that. And the court properly said these damages are too great. But to say that this jury was confused strikes me as being, you know, kind of bizarre. I think this jury knew exactly what it was doing. So, two responses to that, Your Honor. To the question of what the proof of whether there was evidence of a mood or culture, atmosphere of anti-Iranian bias. As an agency, the only thing that district court relied on in its decision was that from the inception that this regulatory agency was enforcing a federally imposed sanction. And that's sufficient to create a mood and atmosphere and culture. That's exactly what she was doing. She was trying to pin a reason on the jury's note. And to me, I think Judge Calabresi is right. I think that this jury decided that that was the prevailing aura at this agency. And this gentleman was never going to get this job. I mean, this is separate and apart from the nature of the note, which was really just advisory, which is another issue for you. But I take it your argument is that the nature of that note shows that they were just lost at sea. Is that? Right, so I guess to respond to the point about why we think that the jury picked the October 2011 date. It was not based on the inception of DFS. And we know this because the very last factual question that the jury submitted before it returned with its verdict was prior to Mr. Sauber filing his out of title grievance, how long had he been doing commensurate work with the risk management specialists who were at level 31? In response, the district court specifically responded and say, look at his union grievance. And the response the district court said was, date grieve duties began October 1st, 2011. That was the last note that the jury submitted asking a factual question. That was not the first time that the jury asked a question about the grievance. And the reason we are here is because that grievance and that whole theory of discrimination, Mr. Sauber had a separate discrimination claim that was premised on that grievance. The district court dismissed that entire theory of liability based on the October 2011 grievance. Because, not for a technical reason, not for statute of limitations or failure to exhaust. Because the jury found that, I'm sorry, because the district court found at summary judgment that no reasonable trier of fact could find any discrimination based on the allegations underlying the grievance. But the grievance- Are you making a sufficiency argument? I'm sorry? Are you making a sufficiency argument? No, we are also making a sufficiency argument with respect to both the discrimination and retaliation claims. But this is to the point of the, whether or not the answer to this question that the jury posed was advisory is beside the point because it, very rarely do we know what the jury is thinking when they're doing their deliberations. Here we have very strong indications from all the jury's conduct, what they were focused on. They asked about the grievance. The grievance was a dismissed claim. If it had not been dismissed at summary judgment, we would not be making this argument here. And we know that the jury picked the October 2011 date because they asked repeatedly about a grievance. A grievance that was neither part of the retaliation claim nor the discrimination claim because it had been dismissed. And for that reason, that's how we know that the October 2011 date doesn't come from the creation of DFS. It comes from the grievance because the jury asked about it. That was the last question they asked. Thank you very much. Thank you. And you reserve two minutes for rebuttal. I did, thank you. May it please the court, my name is Doris Traub. I, together with co-counsel, represent the plaintiff at Pele. Your honors, I think that from the gist of your questions you see that we're dealing with a jury verdict that was rendered after six days of consideration where the jury was very careful. They found discrimination based on national origin, they did not on religion, and they found retaliation. Now, counsel argued that there was a suspicion of confusion. Well, a suspicion of confusion, that is simply a hypothesis. The defendant is essentially saying maybe, maybe the jury was confused. Well, that's simply not enough in a case that is supported by a tremendous amount of evidence. And I'd like to point out that the jury had very good reason to, as the judge indicated, think that from the get-go, from the start of the agency in October 2011, the plaintiff would not have been promoted to Chief Risk Management Specialist. Was that an argument that was made to them? Well, there was, let me say, there's actually a fair amount in the record that goes to that. There was testimony that the position was open at the time of the creation of the agency in October 2011. There was a testimony about the new focus at the agency at the time of its creation of targeting institutions that were alleged to have violated sanctions against Iran. And there was testimony, of course, that at that point in time, October 2011, that's when the plaintiff was sent to the insurance side of capital markets, asked to do and perform the exact same duties as every other market specialist at less money. And despite asking for promotion and filing agreements, which by the way was denied a month after he files his EEOC complaint, he's not paid equivalently, and so very easy from what the jury- What does that argument mean? I mean, you just laid out the evidence, but did you, whoever, present that to the jury as a possibility? That this was, you know, he had it, they had it in for him based on his national origin from the beginning? It was argued that, it was argued that he was not being treated equivalently and that by the time he files his EEOC complaint, what occurs directly thereafter. And it was pointed out to the jury that, you know, even when he files his grievance and it's denied, it's an admitted fact in the record that the defendant didn't even bother to compare his job duties and responsibilities. Damages? Yes. But you're saying it doesn't really matter why they turned him down at that point from a standpoint of law. It doesn't suggest that the jury was confused in saying that they hadn't really interested in that, whether that gives rise to a suit or does not give rise to a suit. Absolutely. In fact, Judge Schofield, in discussing the motions in limine, and she rules orally, but explains her reasoning on each of the motions, including whether the grievance would be allowed in. And that's at the joint appendix pages 93 to 96. She says very clearly, even though matters may not form an independent basis for making the claim, that does not necessarily mean that they're not probative and relevant to the issue of intent. The filing of the grievance is part of the course of events. It's what led up to the counseling.  Parties should not be allowed to cherry pick certain pieces and omit others. If it's important, the jury's going to hear about some of this, to hear about all of it. That's the totality of the circumstances. That's exactly what every employment discrimination case looks at. So, Judge Lohier, you indicated you had a question about damages. So, Judge Schofield did not have the benefit of this state personnel management manual. Is that right? That was not put before the judge. That's correct. The defendants did not argue this manual or place it before- They made the broad argument that- Yes, they did. That you really couldn't use an external candidate's salary. Is that right? That's the argument that was made. But maybe I'm wrong about this. In reading the manual, it seems to me that their argument is correct, that you can't use an extra. That's certainly what the guidance says. Well, what I would indicate is this. The statutory language makes absolutely no such distinction. There is no- New York courts would, I think it's fair to say, defer to what's in the manual. Well, one, I would say there is no case to that effect. And I think that any court would look very carefully at the language of the statute. A personnel bulletin does not have the force of law. And I note that the citation to this personnel manual cites it as a manual being dated in October 2018. That's a date that was after the decision on this case, even, I believe, date after entry of the judgment. I don't know what the prior manuals might have said. You're saying that there is no law that has been cited to us which says that this payment for outsiders as against insiders is required in a particular way. There is no such case, and that would be contrary to the language of the statute. So whether there might be deference or not deference- You're saying that the manual contradicts the unambiguous language of the statute. Absolutely, Judge. Absolutely. How much discretion did the judge have to consider the plaintiff's unique background in formulating the damages? The judge has tremendous discretion in terms of determining whether to peg somebody's salary to another person's salary. And here- Who was she pegging it to, the guy, the- She pegged it to John Capello, who was the first selectee for one of the CRMS positions. Somebody who- Whose qualifications were not as- Far lacking compared to the incredibly impressive qualifications of the plaintiff. So the fact that she would find that he would be entitled to as least at much is certainly true. And the other point I would point out, the judge doesn't really focus on this part of the statute. But the statute goes on to say that if any person in a particular title has their salary raised based on qualifications, then any other individual holding that title in the same geographical area- And as is this case, that's still a 12, 10-month difference. So his salary wouldn't have been entitled to a raise until May of the following year. Well, I think- My problem is that Judge Schofield, but maybe it's not, maybe it's that she's got very wide discretion. But she went down the avenue of section 131 and relied on that reading in the section. The manual seems to suggest that that was wrong. And I wonder if it's not a good idea to send it back on a very discreet issue with the benefit of this manual. Because we were talking about New York law, and that's what she premised it on. Would you have come up with the same damages amount? There's something wrong with that. Yes, I would respectfully submit that there is no basis to send it back, given that that manual, which is simply a personnel manual, it's not just a, it's the New York State- Civil Service Personnel Manual. Absolutely correct, Your Honor. But that does not mean that a manual is entitled to deference, where it is directly contrary to the clear language of the statute. Your basic argument is that the district court, in a situation like this, has very broad equitable powers to decide what the appropriate salary is. And that they looked at Capello and said, this guy is more qualified than indeed was asked to train the other, and that unless there is something that forbids me from doing it, this is the appropriate salary. And that that's what the district judge, in its discretion, did. That's absolutely correct, Judge Calabresi. She essentially said, there is no reason to justify paying the plaintiff less than Mr. Capello, based on his- But even I have no reason to certify this to the New York court. That is absolutely correct. If you have no further questions, thank you, Your Honor. We have Ms. Fang. Just four brief points. I'll start with what the standard is here for our new trial argument on the jury confusion issue. This court's precedents show that all you have to show is that there is a strong suspicion that the jury's verdict was predicated upon confusion. We don't have to prove conclusively that that's what happened. But here, given the context of all the questions that the jury asked, and to your point about whether that theory was argued to the jury, you can read the opening statements. They refer to the grievance also as a promotion throughout. And that may go to the issue of whether or not the jury was confused about that issue. The jury's all that they have are ideas of their own, regardless of whether the party's convinced or not. I mean, that seems to be what this jury did. They looked at the entire record and made- Right, except- It's not required that one of the parties make the argument, is it? That's right, but the point I just wanted to make was, to the point of whether or not the grievance and the allegations underlying, many of which Ms. Traub just talked about. But those allegations can't be used in this case as predicating the jury's verdict because that claim was dismissed. So all the claims, all the arguments about he was treated unequally beginning in October 2011 that were the basis for the grievance. The district court found that no reasonable trier of fact could find a discrimination claim based on those allegations. So the jury's verdict here, to the extent it's based on the grievance state, and that's what the question suggests that the jury posed, that would be reinstating a dismissed claim. Can you address the damages? What is the difference that we're talking about? The difference is not great. I think the difference with respect to just the back pay portion is about $25,000, but it flows into the front pay that the district court ordered and also the estimated pension losses. And to the extent of, to talk about the discretion that the district court had here. District courts have broad discretion if there is a sufficient factual foundation. Here, the district court did not have discretion to disregard mandatory provisions of the civil service law. We talked about provision 1-A, which is the provision that district court relied on, which we set forth in the briefs doesn't apply here because that's not what happened with Mr. Capello. But besides that, there's section 2, 131.2, it's a mandatory provision. That's how employees who are promoted within state service, their salaries have to be calculated pursuant to that provision, and that's mandatory. Back pay, there's not a lot of wiggle room is what you're saying. Unfortunately, with state civil service provisions, and I'm a subject to those as well, they are very regimented, and the legislature made it that way. Ms. Traub says or suggests that there's really no deference, is that right or wrong? The manual is binding. The civil service department basically controls how agencies interpret the civil service law. And here, we're talking about whether the district court misinterpreted provisions of the civil service law. In an appellate division case or in the court of appeals case, there would be clear deference to the agency that administers the civil service provision. With the statute. Well, I just can only refer your honors to section 2, 131.2, which is cited in our briefs. That provision is mandatory, and so this is not the ordinary case where a district court could look at comparators and say you're just as qualified as the person who got you the job because the law controls. Thank you very much. We'll reserve decision.